HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUSTIN R. VORHEES, and KASSI BLANCHARD, spouses,

    Plaintiffs,

    v.

ESURANCE INSURANCE SERVICES, INC., an ALLSTATE INSURANCE SERVICES, INC. company, foreign corporations doing business in the State of Washington,

    Defendant.

Case No. 2:23-cv-00420-RAJ

**ORDER**

This matter comes before the Court on Plaintiffs Justin Vorhees' and Kassi Blanchard's ("Plaintiffs") Motion for Partial Summary Judgment, Dkt. # 24, Defendant Esurance Insurance Services, Inc.'s ("Esurance" or "Defendant") Motion for Partial Summary Judgment Re: Extra-Contractual Claims, Dkt. # 26, and Esurance's Motion to Exclude Plaintiffs' Expert Witness Damian J. Arguello. Dkt. # 29. The parties filed oppositions, replies, and surreplies in support of their requests. Dkt. ## 33, 37, 38, 40, 44, 46, 47, 48, 50. These motions may be decided without oral argument. LCR 7(b)(4). For the reasons stated below, Plaintiffs' request for partial summary judgment is **DENIED**,

ORDER – 1

and Esurance's motion for partial summary judgment as to Plaintiff's extracontractual claims is **GRANTED**. Esurance's motion to exclude Plaintiff's expert is **DENIED**.

## I.     BACKGROUND

This dispute arises out Plaintiffs' automobile policy with Defendant Esurance. Plaintiffs' policy included a Personal Injury Protection (PIP) limit of $10,000, and Underinsured Motorist (UIM) Bodily Injury coverage with a limit of $100,000 per person and $300,000 per accident. Dkt. # 26 (Declaration of Eliot M. Harris ISO Esurance's Motion), Ex. B. At issue is Plaintiffs' claim for UIM coverage and Esurance's handling of their claim.

On July 26, 2018 Plaintiffs were involved in an automobile accident in Snohomish County, Washington. Plaintiffs collided with a vehicle when the other driver, Steven Smith, failed to yield the right-of-way. Dkt. # 1-2 (Complaint) ¶ 3.7-3.10. Plaintiffs submitted a claim to Esurance the same day, and they complained of neck, back, shoulder, and body pain. Dkt. # 26, Ex. A at 3108. At the hospital, Plaintiffs underwent x-rays that showed no fractures and were discharged and referred to chiropractic care and massage therapy. *Id.*, Ex. A at 3108-3109. Smith was insured by Geico Indemnity Company, with a policy limit of $25,000 per person and $50,000 per accident. Dkt. # 1-2 ¶ 3.12. Smith tendered policy limits of $25,000 to Plaintiffs. Dkt. # 25 (Declaration of Tom Mumford ISO Plaintiffs' Motion), Ex. 1 at 3069. Plaintiffs decided to pursue a UIM claim with Esurance, and Plaintiff Blanchard received the full $100,000 in UIM benefits. *Id.*, Ex. 1 at 3034. Further, Esurance paid $10,000 in PIP coverage towards Plaintiff Vorhees' ("Mr. Vorhees" or "Plaintiff") medical bills. *Id.*, Ex. 1 at 2993. In November 2018, Esurance requested that Mr. Vorhees attend an Independent Medical Examination. *Id.*, Ex. D. On the date of the appointment, Mr. Vorhees called Esurance to inform them that he was running late, and because Mr. Vorhees' PIP benefits were nearly exhausted, an Esurance representative told Mr. Vorhees that he need not attend the appointment. *Id.*, Ex. A at Bates No. 3092. Mr.

ORDER – 2

Vorhees' PIP benefits were exhausted by January 2019, according to correspondence from Esurance to Mr. Vorhees. *Id.*, Ex. E. After Plaintiff's PIP benefits were exhausted, there appears to have been no communication between the parties for several years.

According to an exhibit submitted by Esurance, in April 2021 Mr. Vorhees reached out to Esurance and informed the company that he would be represented by counsel concerning his claim for damages.[1] Dkt. # 28, Ex. F. Plaintiff requested a copy of his PIP file, along with other documentation. *Id.* Esurance acknowledged the request via letter on April 13, 2021 and advised Plaintiff that his PIP benefits had been exhausted. *Id.*, Ex. G. Claims file entries reflect that Plaintiff's counsel spoke with Esurance adjusters several times throughout summer 2021. *Id.*, Ex. A at 3067-3062. On June 22, 2021, Plaintiff's counsel indicated that Plaintiff's care was likely complete. *Id.* According to a July 28, 2021 entry by adjuster Michael Wilde, Plaintiff's counsel indicated that he would provide copies of Plaintiff's bills and records in support of his claim in about 45 days. *Id.* In 2021 and 2022, Esurance contacted Plaintiff's counsel on fourteen occasions in an attempt to obtain information relating to Plaintiff's claim. For example, Esurance sent a letter to Plaintiff in September 2021 requesting "specifics of the injuries, type of treatment, amount of medical specials incurred to date, any wage loss information, and the names of your client(s) treating physician(s) at this time." Dkt. # 18, Ex. H. Esurance further requested Mr. Vorhees' signed medical authorization, provider list, and wage authorization. *Id.* Esurance sent similar letters to Plaintiff in October 2021, December 2021, February 2022, March 2022, and April 2022. Dkt. # 28, Exs. I, J, K, L, M. Esurance's claims file reflects multiple telephone calls between the adjuster and Plaintiff's counsel where counsel's office indicated that Plaintiff was in the process of collecting documents and preparing a demand and Esurance confirmed that it was open to receiving documentation, particularly regarding Plaintiff's claim of lost wages. *Id.*, Ex. A at 3027-3032. In November 2021, Esurance

---

[1] Although Esurance states it received this letter in April 2021, the exhibit is dated April 3, 2023. Given the timeline in this matter, the letter appears to be incorrectly dated.

ORDER – 3

responded to Plaintiff's question about appropriate evidence to support his wage loss claim with a suggestion that Plaintiff provide a doctor's report excusing him from work or proof of the loss of his earnings. *Id.* Esurance followed up with Plaintiff's counsel in January 2022, and was told that Plaintiff was still working on his demand. *Id.*

On May 25, 2022, Plaintiff provided a demand letter to Esurance. *Id.*, Ex. N. Plaintiff reported that, the day after the accident, he was examined at Providence's emergency department in Everett, Washington and reported neck and back pain and headaches. *Id.* Plaintiff then began receiving massage therapy, chiropractic care, physical therapy, osteopathic manipulative treatment, and mental health counseling. *Id.* Plaintiff attached various supporting medical records and bills with his demand. *Id.* Regarding his loss of income, Plaintiff explained that he started his own handyman business, called Paintland, a few months prior to the accident. *Id.* Plaintiff had invested in the necessary tools, formed a business plan, and started several projects. *Id.* However, due to the accident, he was unable to perform physical labor or manage jobsites, leading to Plaintiff accruing tens of thousands of dollars in debt and taking a hit to his credit score. *Id.* Ultimately, Paintland was shut down, leading to lost income in excess of $75,000, according to Plaintiff's estimates. *Id.* In support of his wage loss claim, Plaintiff provided Paintland Handyman LLC payroll summaries for July 26, 2018 through July 2019. *Id.* Plaintiff calculated his medical billings in excess of $24,918.80, and estimated that his claim exceeded the UIM policy limit of $100,000. *Id.*

Esurance reviewed the demand letter and generated a damages range of $45,500-$54,000 for Plaintiff's lumbar, shoulder, knee, and ankle pain and headaches. *Id.*, Ex. A at 3012-3014. Esurance did not estimate a range for Plaintiff's lost earnings claim, finding that Plaintiff's company payroll records did not support such a claim and noted that one claimed medical expense lacked documentation. *Id.*, Ex. A at 3011. Esurance estimated the total value of Plaintiff's claim to be between $66,536.58-$75,036.58. *Id.*, Ex. A at 3011.

On June 1, Esurance ordered a social media report on Plaintiff, *id.*, and received the

ORDER – 4

report on June 9. *Id.*, Ex. O. Social media posts by Mr. Vorhees and other family members showed him engaged in physical activities such as mountain biking, camping, hiking, skateboarding, snowboarding, sailing, hunting, splitboarding, and skiing at Mount Baker in 2020, 2021, and 2022. *Id.* Also notable was a 2019 Facebook post in which Plaintiff stated that Paintland was forced to shut down due to several contractors failing to make large payments due to Plainitff. *Id.* According to Esurance, the social media report contradicted many of Mr. Vorhees' claims, in particular Plaintiff's claim that it was Mr. Vorhees' injuries stemming from the accident that forced him to close his business and rendered him unable to work. Dkt. # 26 at 5-6. Given this, Esurance re-evaluated Plaintiff's claim. On June 9, Esurance—via telephone and letter—offered Plaintiff $38,916.58 to settle his claim, as well as $3,280.20 in *Winter's* fees. Dkt. # 28, Ex. A at 2997; Ex. P. Plaintiff, through counsel, then requested an opportunity to provide a statement to Esurance, which Esurance agreed to. *Id.*, Ex. A at 2997. Esurance sent follow-up letters regarding the offer to Plaintiff on July 8 and August 8. *Id.*, Exs. Q, R. On August 30, 2022, the parties held a video call and Mr. Vorhees provided a statement regarding the impact of the accident on himself and his wife. Dkt. # 25, Ex. 1 at 2993-2994. Plaintiff stated that he was still experiencing shoulder pain, was unable to work a 40-hour work week, and his income and credit had been harmed. *Id.* Plaintiff also stated that he hired help to assist him with his business, but the employee proved untrustworthy and stole money from his company. *Id.* After the meeting, Esurance re-evaluated the claim and increased its offer to $55,696.78. *Id.*, Ex. 1 at 2987. According to Esurance, it increased the top general damages range by $5,000, increased the total estimated value of the claim to between $73,916.56 and 52,416.58 with a PIP offset of $10,000 and a tort offset of $25,000, and extended the top offer of the UIM range, as well as offering $3,280.20 in *Winter's* fees. Dkt. # 26 at 7. In September and October 2022, Esurance reached out to Plaintiff via letter and phone call, and were told that Plaintiff intended to reject the offer. Dkt. # 25, Ex. 1 at 2987.

On December 8, 2022, Plaintiff filed an Insurance Fair Conduct (IFCA) claim

ORDER – 5

notification. *Id.*, Ex. 2. The notice alleged that Esurance violated RCW 48.30.015 and WAC 284-30-370 by consistently undervaluing Plaintiff's claim and failing to promptly conclude its investigation. *Id.* Esurance responded to the IFCA Notice on December 27, 2022, explaining that its evaluation was completed on June 9, 2022 and an offer was extended that same day. *Id.*, Ex. 3. Esurance further claimed that it "considered the fully billed medical specials of $23,416.58, $5,000 in lost earnings as a compromise although no tangible proof provided, and well as general damages," and upon completion of an impact statement, Esurance updated its evaluation and extended a new offer for the UIM claim. *Id.* This new offer brought the total proposed settlement to $87,416.58. *Id.* Esurance sent several more status letters to Plaintiff in December 2022 and January and February 2023. Dkt. # 28, Exs. W, X, Y. In January 2023, Esurance spoke with Plaintiff's counsel who advised that they were preparing to file suit. Dkt. # 28, Ex. A at 2985-2986. On February 16, 2023, Plaintiffs filed suit in Whatcom County Superior Court. Dkt. # 1-2. They brought claims for breach of contract, bad faith claims handling under IFCA, breach of the implied duty of good faith under IFCA, and violation of the Washington Consumer Protection Act (WCPA). *Id*. The matter was removed to federal court in by Esurance in March 2023. Dkt. # 1. In May 2023, Esurance filed an Answer and Counterclaim seeking a declaratory judgment that Mr. Vorhees breached the terms and conditions of his policy and misrepresented material facts during Esurance's investigation. Dkt. # 12 ¶ 5.14. On April 2, 2024, Plaintiffs filed a supplemental IFCA Notice alleging that Esurance violated Washington law when it failed to pay Plaintiff the "undisputed" amount of $55,697.37, filed a counterclaim against Plaintiff, and failed to re-evaluate the claim in light of an economic report provided to Esurance. Dkt. # 25, Ex. 8.

In support of their Motion, Plaintiffs submit deposition testimony from Esurance adjuster Michael Wilde and Esurance's claims handling expert Lola Hogan. Dkt. # 25, Exs. 4, 5, 11 ("Wilde Dep."), and 6, 7, 12 ("Hogan Dep."). In his deposition, Mr. Wilde agreed that the UIM offer of $55,696.78 was "fair and reasonable," and that the medical specials

ORDER – 6

of $23,416.58 were reasonable and related to Mr. Vorhees' treatment after the accident. Wilde Dep. 62:20-63:1; 60:22-61:5. Ms. Hogan testified that she believed that Mr. Vorhees was entitled to and offered "some UIM benefits," Hogan Dep. 34:7-8, and that she found the offer conveyed by Mr. Wilde to be "fair," "reasonable," and "considered." Hogan Dep. 31:13-19.

Esurance submits deposition testimony from Mr. Vorhees that his Paintland business started only a few months prior to the accident: he registered the business in April 2018, began advertising in May, began doing jobs at the end of June 2018, and he did about one month of full work prior to the accident. Dkt. # 28, Ex. Z (Vorhees Dep.) 39:13-17; 43:7-9. Esurance asserts that, although it consistently requested documentation to support Plaintiff's wage loss claim, the only documents it received were Paintland's profit and loss records for June to December 2018, payroll summaries with missing pages from July 2018 to July 2019, and tax returns for 2014-2016 and 2019-2022. Dkt. # 26 at 9.

Plaintiff now moves this Court to grant partial summary judgment on Plaintiff's IFCA, common law bad faith, and WCPA claims and enter judgment against Esurance in the amount of $55,696.78, and dismiss Esurance's counterclaim with prejudice and find that Esurance's maintenance of the counterclaim constitutes a violation of IFCA and the common law duty of good faith, the WCAP, and/or Federal Rule of Civil Procedure 11. Dkt. # 24. Esurance moves this Court to dismiss Plaintiff's extra-contractual claims. Dkt. # 26. Esurance also seeks to exclude the testimony and opinions of Plaintiff's expert Damian J. Arguello. Dkt. # 29.

**II.     LEGAL STANDARD**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no

ORDER – 7

reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnell-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. V. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

## III. DISCUSSION

### A. Parties' Motions for Partial Summary Judgment (Dkt. ## 24, 26)

Each party seeks summary judgment as to Plaintiff's IFCA, bad faith, and WCPA claims. Plaintiff also seeks dismissal of Esurance's counterclaim. Plaintiff primarily argues that Esurance has violated Washington law by failing to tender $55,696.98 in benefits—an amount that Plaintiff describes as "undisputed," based on the testimony of

ORDER – 8

Mr. Wilde and Ms. Hogan. Dkt. # 24 at 9-10. According to Plaintiff, there is no "good faith dispute" that Plaintiff's claim is worth at least $55,696.78, and Esurance has violated Washington law by unreasonably failing to pay *at least* these benefits to Mr. Vorhees. *Id.*

1. *Insurance Fair Conduct Act (IFCA)*

Under the Insurance Fair Conduct Act (IFCA), an insurance policyholder who has been "unreasonably denied a claim for coverage or payment of benefits by their insurer" may file an action for damages. RCW 48.30.015. An insurer's alleged violation of a WAC provision is not actionable under IFCA unless it is accompanied by an unreasonable denial of coverage or payment: "By its plain language, IFCA gives an insured no right to sue solely for a violation of a Washington insurance regulation. The right to sue arises solely from an unreasonable denial of a claim for coverage or payment of benefits." *Seaway Props., LLC v. Fireman's Fund Ins. Co.*, 16 F. Supp. 3d 1240, 1255 (W.D. Wash. 2014); *see also* RCW 48.30.015(2). Offering or paying a settlement that is not based on a reasoned evaluation of what the insurer knew or should have known at the time about the insured's claim is an unreasonable denial of coverage under IFCA. *Morella v. Safeco Ins. Co. of Ill.*, No. C12-0672RSL, 2013 WL 1562032, at *3 (W.D. Wash. Apr. 12, 2013). But if there is a delay in payment or coverage "due to a dispute over the amount owed, the delay alone does not constitute a denial of payment under IFCA." *Beasley v. State Farm Mut. Auto. Ins. Co.*, No. C13-1106RSL, 2014 WL 1494030, at *6 (W.D. Wash. Apr. 16, 2014).

Relying heavily on a recent Washington Court of Appeals case, *Beasley v. GEICO Gen. Ins. Co.*, 23 Wn. App. 641, 517 P.3d 500 (2022), *review denied*, 200 Wn.2d 1028 (2023), Plaintiff asserts that "UIM insurers have a duty under Washington law to tender undisputed amounts under the policy, even if there are undisputed amounts that remain to be decided." Esurance argues that no other Washington court has, as of yet, adopted the ruling in *Beasley v. GEICO* and the testimony of Esurance's adjusters, Mr. Wilde and

ORDER – 9

Ms. Hogan, does not support Plaintiff's contention that Esurance's settlement offer was an "undisputed amount."

In *Beasley v. GEICO*, GEICO offered $10,000 to settle plaintiff's UIM claim. 23 Wn.App. 2d at 644. Plaintiff rejected the offer as insufficient but still requested that GEICO pay the $10,000 as an undisputed amount. *Id*. GEICO, however, declined to issue payment. *Id.* Claims adjusters that handled the claim testified as to the existence of "undisputed amounts[s]" that, if not paid, would lead to violations of insurance standards. *Id.* at 647. They further testified that they did not dispute that the $10,000 was owed. *Id.* The trial court granted a Rule 50 motion and instructed the jury that the insurer unreasonably denied the payment of benefits by failing to pay the undisputed UIM offer. *Id.* at 648.

Here, the record before the Court does not support a finding that Esurance, like the insurer in *Beasley*, unreasonably denied payment to Mr. Vorhees. *Beasley v. GEICO* "does not draw a bright-line rule that the failure to remit payment of an amount proposed to settle a UIM claim will always violate IFCA." *Spicher v. Am. Fam. Mut. Ins. Co., S.I.*, No. C22-1116-MJP, 2023 WL 5634210, at *2 (W.D. Wash. Aug. 31, 2023). Indeed, in the unpublished portion of the decision (upon which Plaintiff relies) the Court of Appeals stated that "an insurer is not always obligated to pay an offer that is not accepted by the insured…." *Beasley*, 23 Wn. App. 2d at 671.

While the adjusters in *Beasley* testified that the $10,000 UIM offer at issue was "undisputed," Mr. Wilde and Ms. Hogan did not offer similar testimony. *See* Dkt. # 26, Exs. 4, 5, 6, 7, 11, 12. Although Ms. Hogan testified that she believed the offer was "fair," "reasonable," and "considered," Hogan Dep. 31:18-19, she did not testify that it was "undisputed," and did not concede that Esurance's failure to pay Mr. Vorhees constituted a violation of IFCA. Further, Plaintiff presents no evidence that he actually requested that Esurance tender the supposedly undisputed amounts to him. Finally, this Court notes that the portion of the *Beasley v. GEICO* decision that Plaintiff relies upon

ORDER – 10

carries no precedential value, limiting its application to the matter at hand. *See Box Robison v. Allstate Fire and Cas. Ins. Co.*, No. 2.23-cv-216, 2024 WL 1345076, at *6 (W.D. Wash. Mar. 29, 2024). Like the testimony in *Spicher*, the record fails to "provide a sufficient parallel to *Beasley* that might support summary judgment." 2023 WL 5634210, at *3.

In its motion for partial summary judgment, Esurance argues that Plaintiff cannot show that Esurance unreasonably denied his claim or payment of benefits, and therefore his IFCA claim must fail. Citing *Bridgham-Morrison v. Nat. Gen. Assurance Co.*, C15-927RAJ, 2016 WL 2739452 (W.D. Wash. May 11, 2016), Esurance asserts that its actions during the claims handling process fall within the bounds of reasonable claims handling, and therefore do not violate IFCA. Plaintiff asserts that Esurance failed to investigate his wage loss claim and failed to consult an expert in assessing the claim. Dkt. # 40 at 8-9. However, the record, discussed above, shows that there is no genuine issue of material fact regarding whether Esurance's investigation of Mr. Vorhees' claim was reasonable.

Focusing on what Esurance knew or should have known at the time the offer was made, *see Lloyd v. Allstate Ins. Co.*, 167 Wn. App. 490, 497, 275 P.3d 323 (2012), Plaintiff offers no evidence that the offer in response to his demand letter was unreasonable. At that time, Esurance knew of Plaintiff's medical expenses of $23,416.58, which were covered by his PIP benefits and settlement with GEICO; the social media report reflected that Plaintiff led an active lifestyle, with him engaging in various sports and outdoor activities; his business was registered only months prior to the accident and he started doing jobs one month prior to the accident; and he produced profit and loss and payroll records from 2018 and 2019 (and according to Mr. Vorhees' deposition testimony, his own bookkeeping was not complete and gave little insight as to the performance of his company after January 2019). Dkt. # 26 at 15; Vorhees Dep. 94:10-95:13. And after Plaintiff submitted a victim impact statement, Esurance reevaluated the

ORDER – 11

claim and raised the offer by $5,000.

Esurance's conduct is in contrast to that of the insurer in *Santiago v. GEICO Advantage Ins. Co.*, No. C22-1370RSL, 2023 WL 5802523 (W.D. Wash. Sept. 7, 2023), which is relied upon by Plaintiff. In *Santiago*, evidence pointed towards the insurer ignoring "the majority" of the evidence that was relevant to plaintiff's pain and suffering and medical expenses and falsely claimed that the insured failed to provide updated medical records. 2023 WL 5802523, at *2-3. Such is not the case here, where Esurance consistently requested supporting records and increased their settlement amounts in response to Plaintiffs' impact statement. Without further documentation, such as a doctor's letter excusing Mr. Vorhees from work or more detailed bookkeeping records (which was requested by Esurance on multiple occasions throughout 2021 and 2022) Esurance could not reevaluate Plaintiff's wage loss claim and calculate with reasonable accuracy a higher amount in losses. "These facts demonstrate that Esurance did not unreasonably deny payment of benefits, but instead reasonably disputed the amount." *Country Preferred Ins. Co. v. Hurless*, No. C11-1349RSM, 2012 WL 2367073, at *6 (W.D. Wash. June 21, 2012). Therefore, Plaintiff's request for partial summary judgment as to his IFCA claim is **DENIED**. Esurance's request for partial summary judgment as to Plaintiff's IFCA claim is **GRANTED**.

    2. *Insurance Bad Faith*

In Washington, "an insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith." *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 482, 78 P.3d 1274 (2003). Like other torts, establishing a claim for bad faith requires proof of duty, breach, proximate cause, and damages. *Id.* "In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded." *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 560, 951 P.2d 1124 (1998). "Claims of bad faith 'are not easy to establish and an insured has a heavy burden to meet.'" *Bayley Constr. v. Great Am. E & S Ins. Co.*, 980 F. Supp. 2d 1281, 1290 (W.D.

ORDER – 12

Wash. 2013) (quoting *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 432, 38 P.3d 322 (2002)). Courts must place the insurer's actions in context when deciding whether they were unreasonable, frivolous, or unfounded. *Berkshire Hathaway Homestate Ins. Co. v. SQI, Inc.*, 132 F. Supp. 3d 1275, 1288 (W.D. Wash. 2015) (citing *Keller v. Allstate Ins. Co.*, 81 Wn. App. 624, 633, 915 P.2d 1140 (1996)). "Violation of Washington's insurance regulations is evidence of bad faith." *Id.* at 1252 (citing *Coventry Associates v. Am. States Ins. Co.*, 136 Wn.2d 269, 274, 961 P.2d 933 (1998)).

Typically, insurers are under a heightened duty to consider the interests of their insureds on equal footing with their own. *Schreib v. Am. Family Mut. Ins. Co.*, 129 F. Supp. 3d 1129, 1135 (W.D. Wash. 2015) (citing *Am. States Ins. Co. v. Symes of Silverdale, Inc.*, 150 Wn.2d 462, 470, 78 P.3d 1266 (2003)). But "[t]his enhanced duty does not exist in a UIM case, in which the insurer often stands in the shoes of the tortfeasor, can assert any defense to liability that the tortfeasor had, and thus finds itself in an adversarial relationship with its own insured." *Id.* (citing *Ellwein v. Hartford Acc. & Indem. Co.*, 142 Wn.2d 766, 780, 15 P.3d 640 (2001)). Still, while the insurer is free to be adversarial in the context of assuming the uninsured driver's role in response to its insured's claims, it is not free to be adversarial in the context of fulfilling its policy obligations or other duties that apply to it as an insurer. *See Edmonson v. Popchoi*, 155 Wn. App. 376, 385, 228 P.3d 780 (2010).

"A claim of bad faith cannot succeed when the insurer 'acts honestly, bases its decision on adequate information, and does not overemphasize its own interest.'" *Beasley*, 2014 WL 1494030, at *7 (quoting *Werlinger v. Clarendon Nat. Ins. Co.*, 129 Wn. App. 804, 808, 120 P.3d 593 (2005)). A bad faith claim cannot succeed without proof of harm. *Id.* "Because bad faith is a question of fact, '[a]n insurer is entitled to a dismissal on summary judgment if, after viewing the facts in the insured's favor, a reasonable person could only conclude that its actions were reasonable.'" *Id.* (quoting *Werlinger*, 129 Wn. App. at 808); *see also Integon Preferred Ins. Co. v. Wilcox*, No.

ORDER – 13

2:21-cv-1501, 2023 WL 4978078 (W.D. Wash. Aug. 3, 2023) ("Typically, whether an insured acted in bad faith is a question of fact for the jury; however, the insurer is entitled to summary judgment if there are not disputed facts pertaining to the reasonableness of the insurer's conduct under the circumstances."). Summary judgment is also appropriate in instances where a reasonable person could only conclude the insured was not harmed. *Id.*

Plaintiff's request for summary judgment as to his bad faith claim fails for similar reasons as his IFCA claim. Plaintiff has presented no evidence that Esurance "unreasonably" denied him benefits, or acted in any way that was "frivolous" or "unfounded." *Dees v. Allstate Ins. Co.*, 933 F. Supp. 2d 1299, 1307 (W.D. Wash 2013) (citing *Smith*, 150 Wn.2d at 484) ("To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded.") As discussed above, the holding in *Beasley v. GEICO* cannot be stretched to support Plaintiff's argument that Esurance's failure to tender $55,696.98 constitutes a violation of an insurer's duty of good faith. Indeed, the record reflects that, at the time that Esurance made their offers, they had documentation of Plaintiff's medical specials, but lacked documentation fully supporting Plaintiff's wage loss claim. Dkt. # 28, Ex. A at 3011. And Plaintiff's conclusory assertions, via their expert Mr. Arguello, that Esurance should have consulted with an expert to determine Plaintiff's wage loss or and failed to conduct a reasonable investigation by, for example, waiting until Plaintiffs filed a UIM claim to assign a UIM adjuster fail to create a genuine issue of material fact because "the focus is not on what could have been done, but on what was actually done by the insurer." *Hanson v. State Farm Mut. Auto. Ins. Co.*, 261 F.Supp.3d 1110, 1118 (W.D. Wash. 2017) (citing *Bridgham-Morrison*, 2016 WL 2739452, at *6). No reasonable juror could conclude that there was an unreasonable, frivolous, or unfounded denial of benefits or refusal to pay benefits. The Court accordingly **DENIES** Plaintiff's request for partial summary judgment and **GRANTS** Esurance's motion for partial summary judgment on

ORDER – 14

this issue.

### 3. Washington Consumer Protection Act

Like his bad faith claim, Plaintiff's WCPA claim encompasses the same allegedly unreasonable conduct as his claim under IFCA. Esurance argues that Plaintiff's WCPA should be dismissed, arguing that Plaintiff cannot show a violation of any applicable portion of the Washington Administrative Code (WAC) and that, even if a violation occurred, Plaintiff did not suffer a resulting injury to his business or property. This Court agrees with Esurance.

A Washington Consumer Protection Act claim requires proof of five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). An insured may establish a *per se* trade practice under the CPA by demonstrating a violation of RCW 48.30.010 based upon a violation of WAC 284-30-330. *Keller v. Allstate Ins. Co.*, 81 Wn. App. at 630. Additionally, "an insurer's breach of its duty of good faith represents an unfair trade practice actionable under the CPA and entitles an insured to recover treble damages and attorney's fees." *Id.* at 629. Plaintiff's motion for partial summary judgment or its opposition to Esurance's motion for partial summary judgment does not allege which WAC has been violated, beyond Plaintiff's general assertion that Esurance's conduct constitutes an unfair trade practice that is unreasonable. Dkt. ## 24, 40.

Under the WCPA, "injury is distinguished from damages," and "no monetary damages need be proven so long as there is some injury to property or business." *Sorrel v. Eagle Healthcare, Inc.*, 110 Wn. App. 290, 298, 38 P.3d 1024 (2002). However, "injuries that are derivative of a plaintiff's personal injuries do not constitute an injury to business or property sufficient to sustain an action under the CPA." *Heide v. State Farm Mut. Auto. Ins. Co.*, 261 F. Supp. 3d 1104, 1110 (W.D. Wash. 2017). Plaintiff argues that

ORDER – 15

he has suffered damage to his business and property as a matter of law because he was deprived of benefits under his policy, citing *Peoples v. United Servs. Auto. Ass'n*, 194 Wn.2d 771, 452 P.3d 1218 (2019). However, *Peoples* considered whether the wrongful denial of PIP benefits is an injury to business or property under RCW 19.86.090. *Id.* at 778. In finding that it was, the Washington Supreme Court held that a plaintiff may recover actual damages, including out-of-pocket medical expenses that should have been covered. Here, Plaintiff was paid the full amount of PIP benefits, and Esurance's offer incorporated all of Plaintiff's medical specials for which documentation was provided. Returning again to *Beasley v. GEICO*, this Court cannot clearly state that Esurance was obligated to pay Mr. Vorhees the amount offered to settle his claim, and as such, Esurance's failure to tender the settlement amount does not constitute an injury to Plaintiff's business or property. Because Plaintiff cannot meet at least one element of his WCPA claim, Esurance's request for summary judgment as to Plaintiff's CPA claim is **GRANTED**.

### 4. *Plaintiff's Request to Dismiss Esurance's Counterclaim*

Plaintiff moves this Court to dismiss Esurance's counterclaim for a declaratory judgment with prejudice, arguing that Esurance's filing and maintenance of the counterclaim is a violation of IFCA, the insurer's common law duty of good faith, the Washington Consumer Protection Act, and/or Fed. R. Civ. P. 11. Dkt. # 24 at 2.

"UIM coverage requires that a UIM insurer be free to be adversarial within the confines of the normal rules of procedure and ethics." *Ellwein*, 142 Wn.2d at 780. Citing *Ellwein* and *Lock v. Am. Fam. Ins. Co.*, 12 Wn. App. 2d 905, 921, 460 P.3d 683 (2020), Plaintiff argues that Esurance's post-litigation conduct has fallen outside the Federal Rules of Civil Procedure and Rules of Professional Conduct, leading to a violation of the IFCA. Dkt. # 24 13-15. However, Plaintiff's reliance on these cases is inapposite. *Ellwein* concerned an insurer that used an accident reconstruction expert who opined that the plaintiff-insured was not at fault for the purpose of submitting a demand to another

ORDER – 16

insurer. 142 Wn.2d at 769. However, the insurer also provided supplemental information to the expert for the purposes of defending against an anticipated UIM claim from the plaintiff, and the expert then revised his declaration to state that the accident was solely the fault of the plaintiff. *Id.* The Washington Supreme Court found this kind of "self-deal[ing]" behavior to be in opposition to the insurer's duty to the insured. *Id.* at 782. The Court found it particularly troubling that the insurer in *Ellwein* "commingled" its liability representation file with its UIM file and misappropriated the insured's expert. *Id.* In *Lock*, the insurer's counsel engaged in direct contact with the insured despite knowing that this was prohibited—a direct violation of the Rules of Professional Conduct. 12 Wn. App. 2d at 924. Plaintiff alleges no conduct that rises to the level of misconduct described in *Ellwein* or *Lock,* and Plaintiff cites no other caselaw for the proposition that Esurance's decision to file a counterclaim against him violates either IFCA or the duty of good faith. And in any event, "an insurer's conduct in litigation, after being sued for bad faith, is not a proper basis for a claim of bad faith." *Shin v. Allstate Fire and Cas. Ins. Co.*, No. 2:21-CV-1524-DWC, 2023 WL 3997028, at *5 (W.D. Wash. June 14, 2023) (citing *Lock*, 12 Wn. App. 2d at 905).

As to Plaintiff's argument that Esurance's counterclaim violates FRCP 11[2], this Court finds it similarly unavailing. Relying on what Plaintiff called the "undisputed testimony" of adjusters Mr. Wilde and Ms. Hogan, Plaintiff argues that Esurance's counterclaim is not well grounded in fact. Plaintiff further argues that because he has been accused of insurance fraud in a public record, he has suffered reputational and emotional damages. Dkt. # 24 at 14.

Rule 11 requires that claims be "warranted by existing law or by a nonfrivolous

---

[2] Although Plaintiff's brief in support of his motion for partial summary judgment cites to Federal Rule of Civil Procedure 11(a)(1)-4), *see* Dkt. # 24 at 14, such Rule does not exist. Plaintiff actually quotes Washington Superior Court Civil Rule 11(a)(1)-(4) in his briefing. Washington's "CR 11 was modeled after and is substantially similar to" FRCP 11. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 218, 829 P.2d 1099 (1992).

ORDER – 17

argument for extending, modifying, or reversing existing law or for establishing new law," and that factual contentions have evidentiary support, or "will likely have evidentiary support after a reasonable opportunity for investigation or discovery." Fed. R. Civ. P. 11(b)(1)-(4). According to Plaintiff, Mr. Wilde's and Ms. Hogan's testimony establishes that Esurance's counterclaim is baseless. At deposition, Mr. Wilde was asked whether he felt that Mr. Vorhees was being untruthful or deceptive, and if so, would he have noted that in the file. Wilde Dep. 81:3-82:3. Mr. Wilde stated that he did not recall specifically whether he had concerns about Mr. Vorhees' truthfulness, but "would be led to believe" that if there were no notes to that effect, Wilde had no concerns. *Id.* Hogan testified that there was no indication of fraud on the part of Mr. Vorhees in the claim file and no notes to the effect that Mr. Vorhees was engaging in misrepresentation, but specified that while there was "no evidence of any concern that the accident didn't happen," there was a question as to "the extent of [Mr. Vorhees'] injury." Hogan Dep. 31:20-32.30.

The testimony of Mr. Wilde and Ms. Hogan does not foreclose Esurance's counterclaim. Indeed, Esurance's allegations that Mr. Vorhees concealed or misrepresented material facts with regard to his wage loss claim and the extent of his injuries appear to mostly be supported by the social media report that showed Mr. Vorhees involved in various physical activities, and his medical records. *See generally* Dkt. # 12 ¶ 3.8-3.48. Whether Esurance will prevail on its counterclaim remains to be seen, as it is possible that the claim has no merit. However, a claim that lacks merit is not necessarily a baseless claim. *Bryant*, 119 Wn.2d at 220 ("The purpose behind [Rule 11] is to deter baseless filings, not filings which may have merit."). Plaintiff's request for summary judgment dismissal of Esurance's counterclaim is therefore **DENIED**.

### B. Esurance's Motion to Exclude Plaintiff's Expert Witness (Dkt. # 29)

Esurance moves to exclude the report and testimony of Plaintiff's expert Damian Arguello. Dkt. # 29. Arguello provides the opinion that Esurance's handling of Mr.

ORDER – 18

Vorhees' claim failed to adhere to applicable standards for handling UIM claims in Washington. Dkt. # 34 at 43. Esurance argues that Arguello lacks the requisite training, experience, and knowledge to give an opinion on UIM claims handling in Washington because he has never engaged in claims adjusting in Washington, has never been involved in an insurance claim in Washington, and has not practiced law in Washington. Dkt. # 29 at 3. Further, Esurance takes issue with several of Arguello's opinions; specifically, his opinion that the expectations of the insured are relevant to the analysis of a bad faith claim, Arguello Dep. 120:19-123:3, or that Esurance should have assigned a UIM claims adjuster in July 2018, instead of when Ms. Vorhees opened her own UIM claim. Dkt. # 34 at 44; Arguello Dep. 145:9-147:1. Plaintiff counters that Arguello's testimony is based on his experience as a claims adjuster and familiarity with industry standards. Dkt. # 33 at 6. Plaintiff also notes that, while Arguello's experience has mostly occurred in Colorado, he sets forth similarities in claims handling across both Colorado and Washington—much like Ms. Hogan testified to similarities between Washington and California law in the insurance context. *Id.* at 8.

A trial court is accorded wide discretion when acting as gatekeeper for the admissibility of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Expert testimony is admissible under Federal Rule of Evidence 702 if the expert is qualified and if the testimony is both relevant and reliable. Fed. R. Evid. 702; *see also Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1015-16 (9th Cir. 2004).

As to the strength of Arguello's background and the reliability of Arguello's opinions, his methodology and the evidence and experience upon which he relies will undoubtedly be ripe ground for cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"); *see also* Fed. R Evid. 705 ("…[A]n expert may state an opinion—

ORDER – 19

and give the reasons for it—without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination."). Esurance will have the opportunity at trial to attack Arguello's opinion, including the limits of his expertise and experience and his methodology. Indeed, Esurance raises several concerns with gaps in Arguello's knowledge in its brief. *See* Dkt. # 29 at 5; Dkt. # 30-1 (Arguello Dep.) 30:11-14 (for example, Arguello was unaware that Washington law requires an insurer to send a letter to the insured notifying them of breach). But these challenges go to the weight of Arguello's testimony and his credibility, not its admissibility. *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 970 (9th Cir. 2013). Ultimately, the fact finder may give little weight to Arguello's opinion, considering the issues raised by Esurance. But that is the role of the fact finder—not the Court. The Court "is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Id.* at 969. For these reasons, Esurance's motion to exclude Plaintiff's expert is **DENIED.**

### IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Esurance's motion for partial summary judgment and **DENIES** Plaintiff's motion for partial summary judgment. The Court therefore dismisses Plaintiffs' claims for violation of the IFCA, insurance bad faith, and the WCPA. Esurance's motion to exclude Plaintiff's expert is **DENIED.**

DATED this 20th day of June, 2024.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge

ORDER – 20